I'm sorry, the next case today is Mark Anthony Reed et al. versus Christopher J. Donelan et al., case number 191787. And Mark Anthony Reed et al. versus Christopher J. Donelan et al., case number 191900. Attorney Saraswat. Thank you, Your Honors. I'm Anant Saraswat for the Petitioner's Appellants. With me, our law student attorney, Michael Tayag, supervised by Professor Marisol Oriuela. And I just want to also note that our class representatives, Mr. Reed, Charles, and Williams are on the line as well, observing. With Your Honors' permission, I'd like to reserve two minutes of my time for rebuttal. Yes, you may have it. Thank you, Your Honors. And also with your permission, we'd like to divide our argument. I will address the issues related to forum and timing for challenging mandatory detention, and Mr. Tayag will address the remaining issues, including those raised in the government's cross-appeal. Yes. Thank you, Your Honors. Your Honors, the main questions raised by our appeal, which I'll be addressing, are where detainees can challenge their prolonged mandatory detention under Section 1226C, and when that detention becomes unreasonably prolonged. The answer to the where question is immigration court, and the answer to the when question is six months, based on the due process clause or alternatively the Eighth Amendment. Now, with respect to the first issue, Your Honors, on timing, this court's recognition in its prior opinion in this case, that IJs have authorities to conduct reasonableness hearings, was entirely correct. The reasonableness inquiry is not an inquiry about whether the statute is constitutional. Rather, it is an inquiry conducted pursuant to a constitutional rule set by an Article III court. So the IJs under this scheme would not be interpreting the Constitution, Your Honors. They'd be applying the Constitution, as they do all the time, when dealing with issues like suppression or ineffective assistance, as we noted in our papers. And for that reason, Your Honor, we submit that the authorities that the district court cited, such as Johnson or Hines v. Lynch, are an apposite, because those authorities were dealing with situations where somebody brought to an administrative agency in the first instance a claim that a statute wasn't constitutional, and that's not what we've done here. We've gone to an Article III court and asked Your Honors to make a ruling on the constitutionality, and then we're asking Your Honors to tell the immigration judges what the Constitution requires them to do. Counsel, can I understand exactly what you're arguing? You're talking about a six-month hearing, and now you're talking about a reasonableness hearing before the IJ, which in that scheme might be a prelude to a bond proceeding. I thought your position was that at six months, there should be a bond proceeding before the IJ, not prior to that, a reasonableness proceeding. So I want to be clear exactly what your position is, and your focus on the reasonableness hearing leaves me somewhat confused about your position. Apologies, Your Honor. You are correct. Our primary position is that a bond hearing should be required at six months, and if Your Honors agree with us on that issue, this entire issue of where the IJs have jurisdiction to conduct a reasonableness hearing... Four and a half minutes remain. Thank you. Because there's no dispute that the immigration judges have jurisdiction to conduct a bond hearing, which we do believe should be conducted at six months. However, we also pledge in the alternative that if Your Honors don't agree with us that a bond hearing itself is required at six months, that Your Honor should still order a reasonableness hearing to occur at six months, which would, as Your Honor said, be a prelude to deciding whether a bond hearing should be granted. But you're absolutely right, Your Honor, that our primary position is that just a bond hearing itself is required, and we don't need to reach the issue of jurisdiction for a reasonableness hearing. Counsel, could you help me out on a threshold issue? There are three named plaintiffs in this case. Yes, Your Honor. And as I understand it, one of them actually won already, right? In our prior decision, he won, and that was affirmed and not withdrawn. Correct, Your Honor. And another one is, I think, left the country? One of them has left the country, and another one that has left the country, my understanding, is that he recently won his petition for review and is now eligible to come back to the country, Your Honor. And then another one has been reclassified as not within 1226C. Yes, Your Honor. He was reclassified and then released on that basis. So do we have any named plaintiffs who still have a stake in this case? Yes, Your Honor. Mr. Reid is, in theory, subject to redetention, so I think he would still have a stake in this case. But when you say, what do you mean, in theory, he's subject to? He's already had a hearing and been released, right? Well, Your Honor, two responses. I mean, under the terms of his release, he would, I think, in theory, as I understand it, under certain conditions, be subject to redetention. But even though he was mooted out, there are still other class members to whom the relief would still be relevant. So we don't think that that moots the issue, given that at the time we filed the case, we had a class member who was unquestionably able to get relief from this case. And now we still have a certified class that can get relief under this case. Go ahead, Judge Kayada. You haven't moved to amend to add a new class member as a named plaintiff. But putting that to one side, I guess it seems that then your case would be contingent on your ability to maintain a class action. Because if you can't maintain a class action and the three named plaintiffs no longer have claims, then we're kind of out of luck. Well, Your Honor, as Mr. Tyag will address, we think you can still maintain a class action. And Mr. Reid would still be subject to Section 236C. He won his bond hearing. And also the district court held below, which we think is correct, that this case falls under the sort of transitory exception to the mootness doctrine. So for that reason, we still think there is a live case here with the three named plaintiffs that we have in the class that was certified. Counsel, I thought you were, if I heard you correctly, I thought you were suggesting that even if I understand your Reid detention argument with respect to Mr. Reid, but I thought you were suggesting that even apart from that, that now that the class has been certified, that the class itself has a kind of juridical status that the three named plaintiffs are no longer mooted out. Did I understand your position correctly? Yes, Your Honor, that is our position. And I see my time is up. So if I may, I can yield to my colleague, Mr. Tyag, to address the class issues more fully.  Good morning, Your Honors, and may it please the court. First, the government's incorrect argument that the district court should have to a sponte decertified the class after denying bright line relief becomes moot if the court agrees with petitioners that they're entitled to individualized process before an immigration judge at six months. But even if not, as my co counsel alluded to, the district court did not abuse its discretion in maintaining certification because the class plainly satisfies the requirements of rules 23a and b2. Respondents continue to subject class members to prolonged detention amid this pandemic, separating them from their lives and loved ones as they merely seek individualized. Can we please go back? If there is no six month rule, what is the common question that binds that permits there to be a class action? Your Honor, the common question for which this class was certified and that continues to bind the class is does due process require individualized review of 122060 detention at six months? Yes, that's the question I just put to you. And if we don't think that there is a per se six month rule, regardless of individual circumstances, then it would seem that the basis for the class action is infirm and the entire case goes away. Well, to clarify, Your Honor, although the common question was at the six month mark, the district court nonetheless provided a common answer in the negative that binds the class, even though the class was denied relief in the particular form of a bright line rule. Further, both the declaratory and injunctive relief ordered by the district court apply to the entire class, and either form of relief is independently sufficient to satisfy the requirements of Rule 23b-2. If the district court erred in not granting the government's motion, which I understood was a motion and not a request for a sua sponte dismissal of the class, then don't you have some problems in proceeding? Your Honors, if the First Circuit is inclined to rule that a different class structure may be warranted or that the district court erred in not granting the motion to decertify, then petitioners would submit that it would be fairest and most appropriate to remand to the district court to brief those questions and reach those questions fully. Your Honors, here's the trouble. We've got the statutory bars on some type of actions, query whether it's class actions, but even put that to one side. If we're just looking at the traditional Rule 23 standards, I can start to understand how on the claim of whether there's a six-month rule would be a common claim under B-2, but the question we're having is if we agreed with the district court that the class loses that claim, can there be a class claim on your alternative theory which would seem to call for an assessment of the individual circumstances of each class member? Yes, Your Honor. The district court's judgment, the habeas framework set forth by the district court, and if it were affirmed by this court, sets forth a class-wide basis and a common answer to petitioner's question. According to that framework, then individual claims can be adjudicated pursuant to the resolution. This structure aligns with long-standing practice as to B-2 class actions, and in fact, many courts since Walmart and Jennings have certified classes to address due process and other civil rights claims where class members are differently situated for final relief. The declaratory judgment... But in none of those cases is liability left hanging after the resolution of the common issue, and here, I mean, it's a common issue as to whether the Constitution provides due process. We could answer that, yes, and that advances the case, but it doesn't establish liability before we get to relief. We're still short of even liability under the reasonableness theory. Well, Your Honor, the government is, as I mentioned earlier, uniformly incarcerating detainees under 1226C, and it's on this general action that that question, if the court were to affirm the declaratory judgment, this answers the question that continued deprivation, that unconstitutional deprivation of liberty is reached at some point in time, and that continued detention is presumed unconstitutional. Now, wait a minute. I'm sorry. Judge Lopez, go ahead. Let me be sure I understand. You seem to be saying that as long as the district court gives an answer, the answer being what does due process require in terms of dealing with detention under 1226C, as long as the court gives an answer that applies to all members of the class, that satisfies the requirements for class certification. The fact that that answer might play out differently with respect to members of the class. On the district court's premise, some members of the class might be able to establish through a reasonableness proceeding, I guess, before the district court that they're now entitled to a bond hearing. That doesn't matter in terms of preserving the appropriateness of the class certification. Is that your position? Yes, Your Honor. This sets forth a class-wide framework, and it's according to that framework that individual claims would be adjudicated. That is binding on all members of the class. In addition... May I please ask the question I was starting to ask? You just said what was common was the fact that under C, everyone is subject to mandatory detention. That is not your claim. Your claim is that there has to be a per se rule that they get first a bond hearing or alternatively a reasonableness hearing within six months. This has never been about a challenge to the mandatory detention provision. It is about the timing of when bond hearings have to be. Am I correct about that? Well, Your Honor, this is a challenge to prolonged incarceration. No, no, no, no. You have not. None of your plaintiffs are prolonged detention. The six months does not meet anybody's definition of prolonged detention. It did not meet our prior decision in Reed. So then that becomes a matter of individual circumstance that goes to liability. Well, Your Honor, we would contend that the failure to provide process is sufficient to establish liability for class purposes. And again, the declaratory judgment provides a binding framework on all class members. To touch base briefly as well on the injunctive relief, that also provides an independent basis to maintain class certification here. All class members are entitled to that injunctive relief regarding constitutionally adequate procedures at bond hearings. Haven't you just turned it along? I don't understand the law to be that way. Your Honor, the government argued in its briefing on appeal that the district court should have to respond to be certified the class after denying bright line relief. And we would contend that because the declaratory judgment and the rules 23A and B2 are plainly satisfied here. All right. Could you? I'm sorry, Judge Lynch. No, go ahead, Judge Cayato. We've been asking you questions about the class because that would hinge on one way of hanging on to the case if all the three plaintiffs are kaput. Your colleague, though, at one point was starting to suggest that one of the three plaintiffs may still have a stake and may still be a proper representative of a class. Could you expand on that? Because that would provide an alternative route to getting to the merits. Yes, Your Honor. All of the remaining named plaintiffs continue to be non-citizens and so they could still be subject to 122060 detention if the circumstances arose. That's just saying any. Well, you're saying even before someone's detained, they're a proper member to represent and they have a claim? Well, Your Honor, given their previous criminal histories, it is possible that they would again be detained under 122060 if similar circumstances arose in the future. You mean if they commit a further crime or their circumstances change such as to show danger to the community, right? Because your plaintiff has already been released on a finding that he is not a danger to the community. So it would take something new that he did and that gets back to Judge Kayada's question. Oh, you're saying he can bring this suit even before he's detained because he might commit a crime? Yes, Your Honor. Those are circumstances, of course, that would put named plaintiff Mark Reed under 122060 detention again. I would also add that even if the class were decertified, petitioners here could fall into another mootness exception such as that for cases capable of repetition yet evading review or otherwise retain standing in this case despite no longer being detained. And if it becomes necessary to reach those issues, we would again submit that the party should fully brief those issues before the district court on review as well as potentially considering other class structures under Rule 23 or otherwise. To touch briefly on the injunctive relief as well, petitioners argue that due process requires the and then end. Sure. Due process requires the government to prove both dangerousness and flight risk by clear and convincing evidence to justify their continued unreviewed prolonged confinement. Thank you very much. Thank you, counsel. At this time, if Attorney Fassett would please unmute her device. You may proceed. Good morning. Good morning, Your Honor. Lauren Fassett on behalf of the government defendants for Donnellan et al. We please the court. With the court's permission, I respectfully ask to reserve two minutes for cross-rebuttal. No. Okay. This is if we think you need more time, we will give you more time, but you're not in a position to reserve time. I think you better start with the procedural issues that Judge Keada has raised. Thank you, Your Honor. Well, this court should affirm the district court's holding that 1226C's the removal proceedings and that due process does not require automatic bond hearing. Counsel, did you listen to me? Yes, Your Honor. Let me see if I can help. It sounds like what you just said is that there is a proper class. There's no problem with the three plaintiffs no longer having a stake in the case and we should get on to the full-blown merits, not even stopping at the six-month issue, but beyond that as well. That's what it sounds like you were just saying. Excuse me, Your Honor. No. I was trying to explain that because the district court made those findings, that really ended the case. This case should have been decertified at that point. The name plaintiffs have been mooted out, but because the district court found that it was inherently transitory, we can move on to decertifying this because the answer to the common question was no, not for everyone, that there was no requirement for automatic bond hearing at six months. As soon as the district court found that, there was nothing left for the court to do. The court should have decertified the class because that was the only certified question. The only common issue was their detention for six to resolve that claim to all or none through one bright line rule. Well, when you say that was the only common issue, that's a bit of an overstatement. There were lots of issues that are particularly common. I think the question is not whether there are some common issues, but rather whether the resolution of the common issues will so meaningfully advance the progress of the litigation, at least, for example, establish liability. Yes, Your Honor. The common characteristic they all share is that they've reached six months of detention. Beyond that, whether an individual's due process has been violated does require an individual determination. That's why the government has maintained throughout this litigation that each individual must file their own habeas petition, and there a district court can assess the specific and unique characteristics for each class member. There is no temporal limitation to 122060's mandatory detention. Do you take issue within the approach of the government? Yes, Your Honor. Santos involved a two and a half year detention going on longer with no signs that he was going to get a chance to show he wasn't dangerous. To go back to Judge Kayada's question, if we were to be favorably inclined toward some due process protections on prolonged detention, I think what you are saying is this isn't the case in which to do it. Okay, but let's take it as two steps. Why isn't this the case to do it? It's taken a long time to get us here, and second, what is the government's position on the Santos ruling? Yes, Your Honor. Thank you. The Santos ruling was not a class action, and I think that's critical to the analysis here. This case was not a prolonged detention case brought by an individual alien who had reached one year or two years or some temporal time that anyone has decided would be habeas order here and then the next step of what should happen. Let me interrupt for a second because I asked the question because I thought I read in your brief that you actually agree that under 1226C, mandatory detention, there could be a point at which continued detention without a bond hearing is unreasonable and violates due process. I thought that's what got out of your brief is that you accepted that as a theory. Yes, Your Honor. We do accept that for a specific individual given their unique circumstances. There could be a time in which their detention becomes so unreasonably prolonged that it no longer serves the government's legitimate interest in protecting the public from danger or preventing the alien from absconding and not appearing for their removal. What type of factors do you think the court should assess? Santos puts forward three factors, some of which have some subsidiaries, but what type of factors should be considered in determining whether the continued detention without a bond hearing is unreasonable and constitutionally so? Thank you, Your Honor. The assessment has to start with whether the detention still serves the government's legitimate interest and the interest in protecting the public remains constant throughout the detention period during the removal proceedings. It does have an end point and that is when the removal proceeding is finished. Additionally, the interest in preventing flight can increase with time as if an alien has conceded removability or an immigration judge has already ordered them removed and the case is only on appeal to the Board of Immigration Appeals and is often unsuccessful at that point. So, while there could be factors the court might consider, the length of detention is not the most prominent point. It has to be tied with whether the detention still serves the government's legitimate interest and Congress specifically picked certain criminal aliens and terrorist aliens to be subject to this mandatory detention because of the extreme concern with the dangerousness of the recidivism rates and the high absconding rates. So, that has to be a starting point. All of those factors that you've identified, they could also be considered at a bond hearing that was held at six months, correct? Yes. Okay. So, explain to me why a due process ruling that there should be a bond hearing at six months, which is the primary position of the appellants here. Why is that contrary to any due process requirement, particularly focusing on how the Matthews v. Eldridge construct would inform that analysis? Why isn't that an appropriate due process conclusion applying Matthews v. Eldridge? Thank you, Your Honor. In a habeas petition cannot be filed and will not be granted until the detention has reached a prolonged period. So, the appropriate assessment of those factors is in a habeas petition, but- I'm not talking about a habeas proceeding, counsel. I'm not talking about a habeas proceeding. This would be a bond hearing before an IJ after six months for these 1226C groups that we're talking about. Yes, Your Honor, but Congress explicitly said that 1226C detainees must be detained for the duration of their removal proceeding. There is no right to an automatic bond hearing at any habeas process. And only if in considering the unique circumstances of that individual, the district court says that to that individual, the mandatory detention has become such that it violates their due process. Then the next step would be for that alien to be- Counsel, as I Santos, they looked at what caused the delay in the hearing. Ideally, the immigration system would be able to afford bond hearings within six months, but as a practical matter, that isn't so. Maybe it isn't so because one side or the other has prolonged things. Maybe it isn't so because they're in a border area where they're just overwhelmed. Maybe it isn't so for a number of reasons. Maybe it is for the delay and saying that that was one, a significant part of the analysis as to whether there were unreasonable delays or not. Do you agree with the Third Circuit approach as to how we tell whether there was an unreasonable delay? Yes, Your Honor. I think there are parts from that decision that an individual habeas court could consider, and it certainly would involve the reasons for any delay, whether it was the alien seeking several continuances versus the government. For 122060 detainees, the government does have an expedited docket- Four and a half minutes left. Thank you. What do you mean the government has an expedited docket? Yes, Your Honor. For detained aliens, the immigration courts and the government try not to seek extensions and try to move those cases and schedule those hearings as quickly as possible, and they move significantly faster at this point than individuals who are not detained. So there are safeguards in that regard to limit the time at which the removal proceedings take. But all of these questions are dependent on individual facts, and that is the problem with this case. This case was a class action only asking, does the due process clause require automatic bond hearings for any and all 122060 detainees who breached six months? And the answer was no. It may be that some deserve or their due process has been violated, but for most, the answer is no. And because that inherently turns on individual factors, this court should have decertified the class upon answering that question and saying that the due process clause does not require these automatic hearings at six months. What do you say? I mean, there's a real practical problem here. If you can't go and win on a habeas claim until your detention has become unreasonable, the habeas case itself is going to take more than a few more months. And then you go back and have the bond hearing. It sounds like you have no possible relief until your constitutional rights have been violated. And then even then they're going to get violated some more. So doesn't that create some attraction to have some bright line test that avoids all of that? I would think your client would want to have just for administrative purposes, a bright line test rather than having to respond ad hoc to hundreds of habeas cases. No, Your Honor, the Congress specifically made the statute saying that detention is mandatory for the duration of the proceedings. And there is a definitive endpoint. Often those proceedings take a month and a half to get an immigration judge decision and perhaps three months at the most to get a final decision with the Board of Immigration Appeals. Even if that's true, you have no issue here because they're only asking for six months and you just described that most of them are done inside of six months. So there never would be a bond hearing and there's no issue. Well, the issue is that the statute doesn't provide for bond hearings. The only exception to 1226C detention is a very explicit limited exception. But counsel, we understand we're talking about what constitutional limits might have to be imposed on the statute. To simply say that the statute doesn't provide for it is hardly an answer to the issue that we're trying to address here. I mean, just to follow up on Judge Keada's point, I mean, there is empirical evidence and that seemed to be important to the court and to Moore where they observed that I think the removal proceedings at that point in time were taking in sort of in the five month range. Now we have evidence that it's more typically removal proceedings approach a year. In terms of if we're concerned about prolonged detention that no longer serves the underlying purpose of the statute, that is to be sure that criminal aliens will complete a removal process that might lead to their deportation. I don't know. Shouldn't that inform our judgment as to whether a bright line six month rule under these circumstances might make a lot of sense? Well, Your Honor, this is not a prolonged detention case. This is just about whether due process requires that opportunity for a bond hearing. And that's only if the due process has been violated because then the government's purpose for detaining the alien to protect the community and prevent flight is no longer serving that purpose. There's no indication in a class-wide basis that at six months that happens as to all. And that's really the linchpin to this case. This is not an individual habeas case involving prolonged detention with an alien who's reached an actual live controversy of time where they're... Thank you, Your Honor. So if I just may sum up, this court should vacate the district court's decision declaring one year of presumptively unreasonable and also enjoining the statute in terms of the regular bond proceedings under 1226A and E. Thank you, Your Honor. You've left me at the end to say, what do you want us to do with the court's ruling that the Constitution doesn't require an automatic six-month? You want us to affirm that on a class basis, right? Well, I would ask you to affirm that decision, but in the end, this case needed to be decertified and those parts should be vacated and the court should... But yes, the court should grant... Affirm the district court's decision that there's no volunteering at six months and then remand for judgment in favor of the government. And would that be binding on the class, that determination that you want us to affirm? Your Honor, I don't think this class is appropriate at all because even that decision, the answer is no to all, but the answer could be yes to some. So this, as the government, when we filed our motion to decertify previously with the district court, our point has always been that this is not an appropriate decision for a class-wide basis. Okay. Any other questions? No. Okay. Thank you, counsel. Judge, I believe Mr. Saraswat is going to do rebuttal for two minutes. Yes, that's correct. Thank you, Your Honors. I'd like to focus on three points on rebuttal. First, on the possible issues Your Honors raised with regard to the names plaintiffs. This issue isn't really briefed at all and we think it's not at all clear on the record that was before the district court that all of the class members are moot, particularly Mr. Reed, given that the government, as we understand it, still thinks that Mr. Reed is subject to Section 1226C. To the extent that Your Honors have mootness concerns for that reason, we submit that the proper approach is to remand to the district court for further consideration. We also submit that the proper approach with respect to the possible B2 issue is likewise to remand. Secondly, Your Honors, on the subject of the practical safeguards that the government's we'd just like to reemphasize, as I think Judge Lopez pointed out in his questioning, that those safeguards aren't working for all people. There are many people, as Judge Lopez mentioned, who are being detained for, in some cases, much longer than six months. And so we think that, as we pointed out in our papers, whatever practical safeguards that the government is putting into place, those don't trump the Constitution's requirements. If the mandatory detention statute is being applied unconstitutionally, and we think it is, because these people are being held for longer than six months without any individualized process, then relief is required regardless of the safeguards that the government has put in place. And on the third point, Your Honors, with regard to the practical concerns that Judge Cayatta raised, we think that those are very valid concerns. And that's precisely why we think that, if Your Honors think the right remedy is a reasonableness hearing, that the place that those hearings should happen is in the Immigration Court, and that those hearings should happen on a fixed timeline, at six months, to make the process more efficient for everybody involved. And we don't think there's anything inconsistent with the notion that even the reasonableness hearing has to be individualized, if an individualized reasonableness inquiry is happening at six months. But again, if you decide a bond hearing is what's required, that issue goes away. Thank you, Your Honors. Okay. Thank you very much. That concludes our argument in this case. Mr. Tayag, Attorney Saraswat, and Attorney Aruela, you should disconnect from the hearing at this time.